# In the United States Court of Federal Claims

No. 23-2177C

(Filed: April 17, 2024)

| | |
|---|---|
| **FYI - FOR YOUR INFORMATION, INC.,** | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| **v.** | ) |
| | ) |
| **THE UNITED STATES,** | ) |
| | ) |
| *Defendant,* | ) |
| | ) |
| *And* | ) |
| | ) |
| **LINKVISUM CONSULTING GROUP, INC.,** | ) |
| | ) |
| *Defendant-Intervenor.* | ) |

*Craig Alan Holman,* Arnold & Porter Kaye Scholer LLP, Washington, D.C., for Plaintiff. With him on the briefs were *Thomas A. Pettit, Sean A. Mirski,* and *Sarah Belmont.*

*Eric Evan Laufgraben,* Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for Defendant. With him on the briefs were *Matthew Lewis*, Trial Attorney; *Bryan M. Boynton*, Principal Deputy Assistant Attorney General; *Patricia M. McCarthy*, Director; and *Douglas K. Mickle*, Assistant Director. Also with him on the briefs were *John E. Cornell*, Deputy Chief, Commercial and Administrative Law Division, U.S. Citizenship and Immigration Services; *Caitlin Kelly*, U.S. Small Business Administration; *Christopher Murphy*, U.S. General Services Administration.

*Jeremy Daniel Burkhart*, Holland & Knight LLP, for Defendant-Intervenor. With him on the briefs were *Gregory R. Hallmark, Amy L. Fuentes*, and *Sean Belanger.*

## OPINION AND ORDER

*SOLOMSON*, **Judge.**

For better or worse, sometimes status is everything.  This procurement protest case is all about status.  It involves the government's refusal to recognize Plaintiff, FYI – For Your Information, Inc. ("FYI"), as a certified Women-Owned Small Business ("WOSB") specifically for two pending, but unrelated, procurements.  FYI has submitted proposals for both procurements.  Because FYI lacks the required WOSB certification, however, the government concluded that FYI's proposals are not awardable.  FYI challenges that decision of Defendant, the United States — acting by and through the Small Business Administration, the Department of Homeland Security's United States Citizenship and Immigration Services ("USCIS"), and the General Services Administration ("GSA") — arguing that FYI was improperly disqualified from a WOSB set-aside task order procurement and, in effect, a second acquisition.

For the reasons explained below, the Court concludes that it lacks jurisdiction over FYI's action challenging the government's decision in connection with the task order acquisition.  Moreover, with respect to both acquisitions at issue, FYI's action is untimely based on binding precedent from our appellate court, the United States Court of Appeals for the Federal Circuit.  Accordingly, this case either must be dismissed, or the government and Defendant-Intervenor, LinkVisum Consulting Group, Inc. ("LinkVisum"), are entitled to judgment.

## I.     STATUTORY AND REGULATORY BACKGROUND

The Small Business Act, 15 U.S.C. § 637(m), authorizes contracting officers to restrict a procurement to eligible WOSBs or Economically Disadvantaged Women-Owned Small Business Concerns ("EDWOSBs"). In particular, Section 825 of the National Defense Authorization Act for Fiscal Year 2015 (the "2015 NDAA"), Public Law 113-291, 128 Stat. 3292 (December 19, 2014), amended the Small Business Act to grant contracting officers the authority to award sole source contracts to WOSBs and EDWOSBs.  That section of the 2015 NDAA also created a new requirement that, in order to be awarded either a set-aside or a sole source contract under 15 U.S.C. § 637(m), a concern must be certified as a WOSB or EDWOSB  "by a Federal agency, a State government, the [Small Business Administration ("SBA")], or a national certifying entity approved by the [SBA] as a small business concern owned and controlled by women." 15 U.S.C. § 637(m)(2)(e).

On December 18, 2015, SBA issued an "[a]dvance notice of proposed rulemaking" to implement the 2015 NDAA's WOSB and EDWOSB provisions.  *See* Women-Owned Small Business and Economically Disadvantaged Women-Owned Small Business—

Certification, 80 Fed. Reg. 78984-01, 2015 WL 9195272 (Dec. 18, 2015). In that notice, SBA explained that "Section 825 of the 2015 NDAA removed the statutory authority allowing WOSBs and EDWOSBs to self-certify." *Id.* at 78984. SBA informed the public that it "intend[ed] to draft regulations to implement the statutory changes" and thus sought general comments and answers to a range of questions about possible approaches to implementing regulations. *Id.* SBA received and considered more than 120 comments in crafting proposed regulations. *See* Women-Owned Small Business and Economically Disadvantaged Women-Owned Small Business—Certification, 84 Fed. Reg. 21256-01, 2019 WL 2085934 (May 14, 2019).

On May 19, 2019, SBA sought further public comments in response to a proposed rule that would "amend its regulations to implement a statutory requirement to certify" WOSBs and EDWOSBs. Women-Owned Small Business and Economically Disadvantaged Women-Owned Small Business—Certification, 84 Fed. Reg. 21256-01, 21256, 2019 WL 2085934 (May 14, 2019). SBA explained that "[o]nce this rule is finalized, WOSBs that are not certified will not be eligible to compete on [WOSB] set asides." *Id.* The new certification requirements would replace the then-"current system" which permitted firms either to "be certified by third party certifiers" or "essentially self-certify and upload the required documents to sba.certify.gov." *Id.* at 21260. The SBA explained the purpose and advantages of the new system:

> The benefit of the proposed regulation is a significant improvement in the confidence of contracting officers to make Federal contract awards to eligible firms. Under the existing system, the burden of eligibility compliance is placed upon the awarding contracting officer. Contracting officers must review the documentation of the apparent successful offeror on a WOSB or EDWOSB contract. Under this proposed rule, the burden is placed upon SBA and/or third party certifiers. *All that a contracting officer need do is to verify that the firm is fact a certified WOSB or EDWOSB in SAM.* A contracting officer would not have to look at any documentation provided by a firm or prepare any internal memorandum memorializing any review. This will encourage more contracting officers to set aside opportunities for WOSB Program participants *as the validation process will be controlled by SBA in both SAM and DSBS.*

*Id.* at 21261 (emphasis added).[1]

_____

[1] "SAM" is the "System for Award Management . . . or any successor system" and "means a federal system that consolidates various federal procurement systems (e.g., Central Contractor Registration (CCR), Federal Agency Registration (Fedreg), Online Representations and Certifications Application (ORCA), Excluded Parties List System (EPLS)) and the Catalog of

On May 11, 2020, the SBA issued final regulations to implement the statutory certification requirement. *See* Women-Owned Small Business and Economically Disadvantaged Women-Owned Small Business Certification, 85 Fed. Reg. 27650-01, 2020 WL 2307205 (May 11, 2020).  The final regulations make clear that the new certification process constitutes a mandatory prerequisite for WOSB set-aside eligibility:

> . . . SBA proposed amending the regulations in part 127 to remove references to self-certification with respect to the award of WOSB/EDWOSB contracts. The certification requirement applies only to participants wishing to compete for set-aside or sole source contracts . . . Once this rule is effective, WOSBs and EDWOSBs that are not certified will not be eligible for contracts under the [WOSB] Program.

*Id.* at 27651 ("Other women-owned small business concerns that do not participate in the Program may continue to self-certify their status, receive contract awards outside the Program, and count toward an agency's goal for awards to WOSBs.").  In other words, self-certification no longer suffices for procurement eligibility purposes consistent with the amended statute.  *Id.*  ("SBA has no [statutory] authority to retain self-certification as an option for concerns seeking to compete for WOSB and EDWOSB set-aside procurements").  Additionally, once a concern is initially certified "[u]nder the new regulations, all concerns, whether certified directly by SBA or otherwise, will be required to attest to SBA annually that they remain eligible . . . and undergo a full program examination every three years."  *Id.* at 27653.

In sum, the new certification requirements apply to all new procurements set aside for WOSBs:

> Pursuant to the underlying statutory authority, a concern must be certified as a WOSB or EDWOSB in order to be awarded a WOSB . . . set-aside[.] The change in the

---

Federal Domestic Assistance into one system."  13 C.F.R. § 127.102; *see also Focus Revision Partners v. United States*, 161 Fed. Cl. 711, 721-26 (2022) (discussing development of SAM).  DSBS is the "Dynamic Small Business Search" and is "the database that government agencies use to find small business contractors for upcoming contracts."   13 C.F.R.  §  126.103;  *see also* https://dsbs.sba.gov/search/dsp_dsbs.cfm; https://www.sba.gov/federal-contracting/contracting-assistance-programs/women-owned-small-business-federal-contract-program ("In order to maintain their status with the WOSB program, firms need to update their SAM.gov profile annually, to ensure their DSBS profile remains active."); https://www.sba.gov/partners/contracting-officials/contracting-program-administration/wosb-federal-contract-program-administration ("Contracting officers no longer have to verify a WOSB firm's documentation.  Program participation will be displayed on the firm's Dynamic Small Business Search profile.").

regulations implementing that statutory provision does not affect contracts previously awarded . . . , so a concern that was previously awarded a WOSB or EDWOSB contract may continue to perform that contract and the procuring agency may continue to count the contract towards its WOSB goal. . . . *For new WOSB and EDWOSB set-aside contracts, a concern must be able to demonstrate that it has applied for certification before the date it submitted a bid, and that it has not previously sought and been denied certification.*

*Id.* (emphasis added).

The SBA regulations could not be clearer as they stand now: "A concern must be certified as a WOSB or EDWOSB pursuant to § 127.300 in order to be awarded a WOSB or EDWOSB set-aside or sole-source contract." 13 C.F.R. § 200(c)(1). In turn, 13 C.F.R. § 127.300 provides that, to obtain WOSB certification, a concern must apply to SBA or to an approved third-party certifying organization. 13 C.F.R. § 127.300(a). Once approved, "[i]f SBA determines that the concern is a qualified WOSB or EDWOSB, it will issue a letter of certification and designate the concern as a certified WOSB or EDWOSB on the Dynamic Small Business Search (DSBS) system, or successor system." 13 C.F.R. § 127.300(c).

Subsequently, the FAR was updated to conform to the statutory and SBA regulatory changes described *supra*. *See* Federal Acquisition Regulation: Certification of Women-Owned Small Businesses, 87 Fed. Reg. 58237-01, 2022 WL 4380772 (Sept. 23, 2022). In that final rule, for example, FAR 19.1505 was amended to provide, and currently provides, as follows:

> (e) The contracting officer *shall verify* that offers received are eligible for consideration for award *by checking SAM* to see if the EDWOSB or WOSB concern is designated as a certified concern *or checking DSBS* for a pending application for certification.

> (1) If the offeror is designated as certified in SAM or has a pending application for certification in DSBS, proceed with the offer evaluation.

> (2) *Unless the offeror is designated as certified in SAM or has a pending application for certification in DSBS, the offer is not eligible for award and shall be removed from consideration.*

FAR 19.1505(e) (emphasis added).

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY[2]

FYI challenges the government's decisions with respect to FYI's WOSB certification status — and hence FYI's eligibility to compete — in two procurements: (1) Task Order Request for Proposals No. 70SBUR23Q00000180 (the "Task Order Solicitation" or the "Task Order Procurement") issued by USCIS under the Human Capital and Training Solutions ("HCaTS") Small Business ("SB") – Pool 2 Governmentwide Acquisition Contract ("GWAC"); and (2)  the GSA One Acquisition Solution for Integrated Services Plus ("OASIS+") WOSB set-aside  procurement, conducted pursuant to Request for Proposals No. 47QRCA23R0005 (the "OASIS+ Solicitation" or the "OASIS+ Procurement").

### A.  The USCIS Task Order Solicitation

The HCaTS SB GWAC is a government-wide, multiple-award, indefinite-delivery-indefinite-quantity ("IDIQ") small business set-aside contract vehicle for customized training and development services, human capital strategy services, and organizational performance improvement services for use by all Federal agencies and certain other entities.  *See* ECF No. 1-2 at 8 (Compl. Ex. 2, HCaTS SB GWAC); AR 6453 ("HCaTS SB is comprised of two separate Government-Wide Multiple Award, Indefinite Delivery, Indefinite Quantity . . . task order contracts").  FYI received an HCaTS SB GWAC award in May 2016.  *See* AR 6357, 6359.[3]

Although the HCaTS SB GWAC permitted offerors to self-certify as WOSBs, that contract was *not* set aside for WOSBs, nor did it establish a "pool" for WOSB concerns. AR 6452-53 ("HCaTS SB is a total small business set-aside contract.  In addition to total small business set-asides, task orders placed under HCaTS SB may be set aside at the [contracting officer's] discretion for socio-economic subgroups[,]" including WOSBs.). Indeed, there are only two "pools" under the HCaTS SB GWAC, reflecting "NAICS

---

[2] This background section constitutes the Court's findings of fact drawn from the administrative record. Rule 52.1 of the Rules of the United States Court of Federal Claims ("RCFC"), covering judgment on the administrative record, "is properly understood as intending to provide for an expedited trial on the record" and requires the Court to "make factual findings from the record evidence as if it were conducting a trial on the record." *Bannum, Inc. v. United States*, 404 F.3d 1346, 1354, 1356 (Fed. Cir. 2005).  Other factual findings are contained in the Discussion section of this opinion, *infra*.  Citations to the administrative record, ECF No. 21, are denoted as "AR" followed by the page number bolded in the lower right-hand corner of each page of the administrative record.

[3] Given that HCaTS is a GWAC, other agencies may issue task orders under it.  AR 6421 ("HCaTS SB provides all Federal agencies the flexibility to determine fair and reasonable pricing tailored to the ordering agency's requirement dependent upon level of competition, risk(s), uncertainty(ies), complexity, urgency and contract type(s).").

Codes and small business size standards . . . periodically updated and revised by the SBA." AR 6453. At the time USCIS issued the Task Order Solicitation, those pools comprised: (1) small businesses under a $12 million size standard; and (2) small businesses under a $16.5 million size standard. *Id*.[4]

On May 9, 2016, the then-HCaTS SB GWAC contracting officer emailed the SBA to "confirm" if certain firms — including FYI — "have filed all required eligibility documentation for the WOSB Program." AR 6338. The next day, an SBA procurement analyst responded that "[i]n accordance with FAR 19.1505(e), the file for FYI . . . has been validated as ELIGIBLE for an award under WOSB set-aside." AR 6337. The record does not make clear — and the parties have not explained to the Court — the significance of this determination for the purpose of the HCaTS SB GWAC. Indeed, any characterization of a concern's WOSB status with regard to the HCaTS SB GWAC is a non-sequitur because the HCaTS SB GWAC was not set aside for WOSBs. Put yet differently, a concern's WOSB status had no bearing on that procurement; it could be material only to a specific future task order. In that regard, FAR 19.1505(e) provided, at that point in time, that "[t]he contracting officer must check whether the apparently successful offeror filed all the required eligibility documents, and file a status protest if any documents are missing." FAR 19.1505(e) ("Set-aside Procedures"), 2016 WL 1393033 (C.C.H. Dec. 31, 2015). But, again, that FAR provision requires verification of status *at the time of award of a WOSB set-aside contract*, and the HCaTS SB GWAC is not such a contract.[5]

On November 17, 2022, SBA informed FYI that for "firms that are seeking to participate in the [WOSB program], the certification process . . . had changed as put forth by Congress in the 2015 National Defense Authorization Act." AR 8000. SBA further warned FYI that "WOSB Program Participants will no longer be able to self-certify as a WOSB[.]" *Id.* ("SBA has transitioned to a new certification system to process applications for firms seeking program participation."). FYI thus was on notice that "to access . . . set-aside contracts through the WOSB Program you must be certified." AR 8001.

---

[4] The HCaTS SB GWAC was adjusted over time to reflect different size standards for the two pools. *See, e.g.*, AR 2946 (2016 version listing pools of "11M and 15M"). Because the November 2021 version of the HCaTS SB GWAC was operative (apparently via an exercised option) at the time of the Task Order Solicitation at issue, that is the only relevant version for this case. *See* AR 6415-78.

[5] *See* 13 C.F.R. § 127.102 ("WOSB requirement means a Federal requirement for services or supplies for which a contracting officer has restricted competition or awarded a sole source contract or order to eligible WOSBs, including Multiple Award Contracts, partial set-asides, reserves, sole source awards, and orders set aside for WOSBs issued against a Multiple Award Contract."). Here, only the Task Order Procurement — not the HCATS SB GWAC — has been set aside for WOSBs. The HCATS SB GWAC is *not* a "WOSB requirement" pursuant to 13 C.F.R. § 127.102.

In response to the SBA's notice about the new WOSB certification process, FYI asked for "assist[ance] in completing our recertification application online." AR 7999. This inapposite request — and the SBA's response — appears to be the genesis of FYI's confusion. *Id.* Indeed, while SBA explained that "[t]he re-certification process is on hold for the moment[,]" SBA cautioned that "[a]s long as you have your certification letter, you have met the requirements for program eligibility." *Id.* FYI apparently thought that "certification" referred to some prior communication, perhaps related to the GWAC itself, but the plain meaning of SBA's message was that FYI had to go through the new certification process, as the SBA later explained: "Your firm's certification status (WOSB or EDWOSB) is reflected ONLY in the SBA's Dynamic Small Business Search (DSBS) tool[.]" AR 8002 (providing the pertinent DSBS website link). FYI had not obtained the necessary certification, pursuant to the new process, to be listed as a certified WOSB concern in DSBS or SAM.

The SBA communicated all of this to FYI in yet another email on November 21, 2022. AR 8045-46. Yet FYI apparently continued to confuse the old re-certification process with the newer, required certification process. For example, in response to SBA's November 21, 2022, email, FYI sent an email to an SBA representative, Towanda Nathan, inquiring about "[o]ur WOSB re-certification application" which "looks like it was canceled." AR 8044. The SBA responded to clarify that, according to its records, FYI's WOSB application "has been in draft status for 90 days or more, which means that it has not been submitted to our analysts for review." *Id.* SBA informed FYI that its "current application **has been removed** from the system and to be considered for certification you **must start a new application**." *Id.* (emphasis in original). Within the hour — all on November 22, 2022 — an FYI employee responded that he would "complete the new application asap." AR 8043. Later that same day, the same FYI employee informed SBA that FYI was "completing the application for the owner of the company" but complained that he was "so confused as to how to move forward and submit." AR 8042.

The administrative record demonstrates that, as of July 20, 2023, FYI still did not understand the new certification requirement, AR 8063, despite the multiple previous SBA emails explaining the 2015 NDAA changes. And while SBA's email responses were not models of precision, neither were FYI's questions. *See* AR 8064-65. On July 30, 2023, FYI once again asked Ms. Nathan, the same SBA representative, whether FYI had "to submit a new application." AR 8063. She responded: "I only handle technical issues" and advised FYI to "contact your local APEX Accelerator and they can better assist you." *Id.*[6] The FYI employee said he would "try them now." *Id.*

---

[6] *See* https://www.sba.gov/local-assistance/federal-contracting-assistance (explaining APEX Accelerators).

As explained below, FYI never submitted a certification application in time for the Task Order Procurement at issue.

On September 29, 2023, USCIS issued the Task Order Solicitation, seeking proposals to provide human resources support services. AR 7355, 7517. The Task Order Solicitation — unlike the HCaTS SB GWAC — *is* 100% set aside for WOSBs and expressly incorporates FAR 52.219-30, Notice of Set-Aside, or Sole-Source Award to, Women-Owned Small Business Concerns Eligible Under the Women-Owned Small Business Program (Oct. 2022). AR 7355, 7360, 7482. The Task Order Solicitation established an October 27, 2023, deadline for proposals. AR 7479. On October 27, 2023, FYI submitted its proposal in response to the Task Order Solicitation. AR 7541.

On October 30, 2023, USCIS checked FYI's SBA Profile in the SBA's DSBS system, as the current WOSB regulations require. AR 7707. FYI's SBA Profile reflected its "Self-Certification" of WOSB status. But the boxes for "WOSB Certified?" and "WOSB Pending?" were both checked "No." *Id*. FYI's SBA Profile indicated that it had not been updated since November 21, 2022, meaning that FYI's status had not changed between that date and FYI's October 27, 2023, task order proposal. AR 7706.

On November 24, 2023, USCIS emailed SBA, noting that FYI's SBA profile had its WOSB certification status marked as "No," and asked SBA to "confirm if FYI's WOSB certification is eligible for a 100% WOSB Set-Aside." AR 7700-01. SBA responded to USCIS that FYI "is neither verified nor in a pending status," and quoted 13 C.F.R. § 127.504(a), which provides that an offeror for a WOSB set-aside must either be a certified WOSB or represent that it has submitted a complete application for WOSB certification to SBA or a third-party certifier. AR 7700. USCIS then replied to SBA, asking if FYI retains its claimed WOSB status for the life of the HCaTS SB GWAC or if FYI would have to obtain certification to be eligible for WOSB set-aside task orders. AR 7699. SBA noted that FYI had initiated several certification applications, but that "none of the applications was submitted," and therefore FYI was not SBA-certified as a WOSB. AR 7698. SBA also noted that FYI had "three draft applications in our system" and that "[d]raft applications mean [FYI] started an application but it was not submitted." AR 7704. FYI does not assert that it ever completed a WOSB certification request pursuant to the SBA's new WOSB regulations prior to FYI's submitting its task order proposal, let alone that it was certified in a timely manner pursuant to the new regulations.

On November 27, 2023, USCIS again emailed SBA, inquiring whether FYI's status for the HCaTS SB GWAC award governs FYI's status for task order procurements. AR 7697-98. SBA responded that "because this procurement is not [a] WOSB set-aside at the contract-level, the firm would have to be formally certified at the time of offer" for the Task Order Procurement. AR 7697. Again, FYI was not formally certified as required at the time FYI submitted its task order proposal.

On November 30, 2023, SBA informed FYI that its "recently submitted application for participation" in the WOSB program "has been screened and found to be incomplete for further processing." AR 7900 (returning FYI's application to FYI with a deadline of December 6, 2023, "to provide the missing documents for further processing and determination"). By December 4, 2023, however, FYI apparently managed to apply for formal WOSB certification, as SBA had moved FYI's application for WOSB certification into "pending" status. AR 8076 ("As of the date of this notice, your application has moved to pending status.").

On December 7, 2023, SBA notified FYI that it was ineligible for award under the Task Order Solicitation because FYI had neither SBA-certified WOSB status nor a pending application for such status as of October 27, 2023, the date FYI submitted its proposal for the Task Order Procurement. AR 7791. Indeed, by December 11, 2023, "FYI's SBA Profile in the SBA Dynamic Small Business Search system was checked four different times" and "[e]ach time their WOSB certified status was marked 'No.'" AR 7832 (December 11, 2023, Award Decision Documentation). Although FYI had started to "appl[y] twice for the SBA WOSB certification in 2022 and once in July 2023[,]…none of their applications were [actually] submitted." *Id.* Accordingly, the USCIS contracting officer "determined FYI non-responsive and ineligible for award." AR 7833.

### B. The OASIS+ Solicitation

FYI submitted a proposal for GSA's OASIS+ WOSB set-aside solicitation on September 21, 2023. AR 1950. The OASIS+ contracting vehicle comprises a family of six separate government-wide multiple-award IDIQ task order contracts: one is unrestricted by size; one is set aside for small businesses; and four are set aside for various socioeconomic subgroups, including WOSBs. AR 1666. OASIS+ encompasses a broad range of services in several "domains," including "Management and Advisory," "Technical and Engineering," "Research and Development," "Intelligence Services," "Environmental Services," "Facilities," and "Logistics." AR 1677. The OASIS+ Solicitation set-aside for WOSBs provides that "[a] concern must be certified by the SBA as a WOSB . . . pursuant to 13 C.F.R § 127.300 and FAR 19.15 in order to be awarded a WOSB set-aside contract." AR 1677. Alternatively, a "WOSB concern may also submit an offer under this set-aside when the offeror has a pending application for EDWOSB or WOSB certification in the Dynamic Small Business Search (DSBS)." *Id*. Like the Task Order Solicitation, the OASIS+ Solicitation incorporates FAR § 52.219-30. AR 1753.

As part of an initial review of FYI's proposal, GSA's OASIS+ contracting team recognized that FYI had only self-certified in SAM as a WOSB and was not designated as an SBA-certified WOSB in SAM. AR 2455. Rather, FYI was shown in DSBS only as a pending applicant for WOSB certification as of December 4, 2023—several weeks after its OASIS+ proposal submission. *Id.*

On December 15, 2023, GSA requested clarification from FYI about its WOSB status, writing to FYI: "After a review of the Offeror's DSBS profile, the Offeror is not WOSB certified[,] and it appears WOSB status is pending as of 12/4/2023.  This seems to indicate the Offeror did not have a pending application at time of offer submission."  AR 2455.  On December 22, 2023, FYI responded to GSA, contending, among other things, that FYI's prior self-certification on the separate HCaTS GWAC in 2016 should satisfy the certification requirements for the OASIS+ Solicitation in 2023.  AR 2456-57.  GSA has not taken further formal action on FYI's proposal since then.

### C.  FYI's Initial Complaint

On December 27, 2023, FYI filed its complaint against the United States.  ECF No. 1 ("Compl.").  FYI alleges that the government generally deprived FYI of the benefits of participating in the SBA WOSB program and, in particular, improperly denied FYI the opportunity to compete for two WOSB set-aside contracts.  Compl. at 1.

Specifically, FYI claims that the government acted arbitrarily, capriciously, or otherwise contrary to law when: (1) SBA failed to list FYI as an SBA-certified WOSB, Comp. ¶¶ 94-95 (Count I); (2) USCIS unlawfully increased the scope of the HCaTS SB GWAC (by excluding FYI from the task order competition), *id.* ¶¶ 122-39 (Count II); (3) GSA and USCIS exceeded their authority in declaring FYI ineligible to compete for WOSB set-aside procurements, *id.* ¶¶ 141-64 (Count III); and (4) USCIS and SBA allegedly violated SBA's WOSB status protest regulations, *id.* ¶¶ 165-67 (Count IV).

On January 3, 2024, LinkVisum Consulting Group, Inc. ("LinkVisum"), moved to intervene as a defendant, ECF. No. 8, which this Court granted the next day, ECF No. 14.  On January 17, 2024, LinkVisum moved to dismiss FYI's complaint pursuant to Rule 12(b)(1).  ECF No. 19 ("LinkVisum MTD").  On January 19, 2024, the United States filed the administrative record.  ECF No. 21.  On February 1, 2024, FYI filed both (1) a response to LinkVisum's motion to dismiss, ECF No. 24, as well as (2) a motion for judgment on the administrative record ("MJAR"), ECF No. 25.  On February 15, 2024, LinkVisum filed its reply in support of its motion to dismiss.  ECF No. 27.  The government filed its own combined motion to dismiss pursuant to Rule 12(b)(1) and cross-MJAR and response to FYI's MJAR.  ECF No. 28 ("Def. MJAR").  LinkVisum filed its own cross-MJAR and response on February 16, 2024.  ECF No. 29.  The parties filed timely response and reply briefs.  ECF No. 31 (FYI's MJAR response and reply ("Pl. Rep.")); ECF No. 33 (government MJAR reply ("Def. Rep.")); ECF No. 34 (LinkVisum MJAR reply).

On March 6, 2024, the Court held oral argument on the pending motions.  ECF No. 38 ("Tr.").[7]

---

[7] On February 23, 2024, FYI filed a "protective motion" to amend its complaint, apparently out of an abundance of caution, to address or moot several arguments in LinkVisum's motion to

## III.     JURISDICTION & STANDING

The Tucker Act provides that an "interested party" may file an "action" in this Court "objecting [1] to a solicitation by a Federal agency for bids or proposals for a proposed contract or [2] to a proposed award or [3] the award of a contract or [4] any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1); *see also Aero Spray, Inc. v. United States*, 156 Fed. Cl. 548, 559 & n.18 (2021) ("Section 1491(b) actions are typically referred to as 'bid protests.'"). FYI's allegations center on the general claim that the government's "errors, individually and collectively, have deprived FYI of the opportunity to compete for WOSB set-aside contracts and resulted in USCIS rescinding an award to FYI." Compl. ¶ 35. The government and LinkVisum do not contest that FYI's claims are generally within this Court's jurisdiction pursuant to 28 U.S.C. § 1491(b) or that FYI possesses standing to pursue them.

Nevertheless, both the government[8] and LinkVisum[9] move to dismiss certain of FYI's claims — those related to the Task Order Procurement — pursuant to the Federal Acquisition Streamlining Act's ("FASA") task order protest bar. *See* Pub. L. No. 103-355, § 1004, 108 Stat. 3243, 3252–53 (codified, as amended, at 10 U.S.C. § 2304c(e) and 41 U.S.C. § 4106(f)). The FASA task order protest bar provides as follows:

> [a] protest is ***not*** authorized ***in connection with*** the ***issuance or proposed issuance of a task or delivery order*** except for—
> (A) a protest on the ground that the order increases the scope, period, or maximum value of the contract under which the order is issued; or (B) a protest of an order valued in excess of $10,000,000.

41 U.S.C. § 4106(f)(1) (emphasis added). The GAO has exclusive jurisdiction to decide claims arising under the latter exception. *Id.* § 4106(f)(2). If the FASA task order protest bar applies, this Court lacks jurisdiction to decide Count I, Count III, and Count IV of FYI's complaint — at least to the extent they relate to the Task Order Procurement. *See*

---

dismiss. ECF No. 30. On March 1, 2024, both the government and LinkVisum responded to FYI's motion to amend its complaint. ECF Nos. 32, 34. Following oral argument, the Court issued an order, noting that "counsel for FYI conceded at oral argument that FYI's complaint and proposed amended complaint are substantially the same[,]" and thus denying as moot FYI's motion to amend its complaint. ECF No. 35 at 2; *see also* Tr. 168:3-6 (FYI's counsel agreeing that "[t]he Court can deny [its motion] as moot"). The Court also concluded "with some confidence that FYI is unlikely to prevail on the merits of the case" and, thus, there was "no reason for this Court to continue to hold the government to its agreed-upon stay of the procurement at this stage." *Id.*

[8] Def. MJAR at 16-25.

[9] LinkVisum MTD at 5-12.

Compl. ¶¶ 115, 141 ("The USCIS Contracting Officer determined that FYI is not eligible to compete for this WOSB set-aside task order . . ."), and Compl. at 38 (requesting injunction to preclude the government "from declaring FYI ineligible to complete for any WOSB set-aside procurement, including any [task] orders under the HCaTS GWAC").[10]

The government further argues that FYI's claims with respect to the OASIS+ Procurement are not ripe. Def. MJAR at 26. Article III (§ 2, cl. 1) of the Constitution limits the exercise of the judicial power to "Cases" and "Controversies." *Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433, 438 (2017). "This fundamental limitation preserves the 'tripartite structure' of our Federal Government, prevents the Federal Judiciary from 'intrud[ing] upon the powers given to the other branches,' and 'confines the federal courts to a properly judicial role.'" *Id.* (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337-38 (2016)); *see Salazar v. Buono*, 559 U.S. 700, 734 (2010) (Scalia, J., concurring) ("Article III's case-or-controversy requirement is not merely a prerequisite to relief, but a restraint on judicial power."). The Supreme Court has developed "specific but overlapping doctrines rooted in the same [case-or-controversy] Article III inquiry, which must be met for a controversy to be justiciable, including standing, *ripeness*, and a lack of mootness." *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1336 (Fed. Cir. 2008) (emphasis added); *see also DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) ("The doctrines of mootness, ripeness, and political question all originate in Article III's 'case' or 'controversy' language, no less than standing does."). "Although Article III's requirements are jurisdictional in a broad sense, they are more accurately characterized as prerequisites to subject matter jurisdiction." *Superior Waste Management LLC v. United States*, 169 Fed. Cl. 239, 252 (2024) (discussing cases).

## IV.    STANDARD OF REVIEW

Courts, including the Federal Circuit, uniformly "recognize two categories of jurisdictional attacks that a defendant in any court may assert: facial and factual." *Perry v. United States*, 149 Fed. Cl. at 11, *aff'd*, 2021 WL 2935075 (Fed. Cir. July 13, 2021); *see also Panavise Prod., Inc., v. Nat'l Prod., Inc.*, 306 F. App'x 570, 572 (Fed. Cir. 2009) (explaining that where a defendant "mounted a factual attack of the asserted basis of subject matter jurisdiction," the complaint allegations are not controlling and the burden shifts to the plaintiff "to demonstrate facts sufficient to support its contention regarding the court's jurisdiction"). Because Article III standing is jurisdictional, a defendant may mount a facial or factual attack on a plaintiff's standing. *Thorne v. Pep Boys Manny Moe & Jack Inc.*, 980 F.3d 879, 885 (3d Cir. 2020) ("Constitutional standing, which is properly tested under Rule 12(b)(1), may be challenged facially or factually.").

---

[10] Following oral argument, FYI formally withdrew its claim that the Task Order Solicitation exceeded the scope of the GSA's HCaTS SB GWAC under which USCIS issued the Task Order Solicitation. ECF No. 36 (withdrawing Compl. ¶¶ 136-39).

"A facial jurisdictional attack challenges whether . . . jurisdiction was properly pleaded." *Perry*, 149 Fed. Cl. at 11 (internal quotations omitted). Such an attack can take two forms. A defendant can either "assert that the plaintiff has failed to plead jurisdiction as required by Rule 8(a)(1)" or "assert that, while properly pleaded per Rule 8(a)(1), the allegations — even when assumed to be true — fail to establish jurisdiction under the relevant statute or constitutional provision." Steven S. Gensler & Lumen N. Mulligan, 1 *Federal Rules of Civil Procedure, Rules and Commentary, Rule 12* (Feb. 2020 Update); *see also Crow Creek Sioux Tribe v. United States*, 900 F.3d 1350, 1354-55 (Fed. Cir. 2018) ("[W]e join the majority of our sister circuits in holding that the Supreme Court's 'plausibility' requirement for facial challenges to claims under Rule 12(b)(6), as set out in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009), also applies to facial challenges to subject-matter jurisdiction under Rule 12(b)(1)."). The government's and LinkVisum's jurisdictional arguments here are facial attacks, as they challenge whether FYI has pleaded facts sufficient to show that this Court has jurisdiction over FYI's various claims. For the purposes of resolving the motions to dismiss, therefore, the Court assumes all non-conclusory factual allegations in FYI's complaint to be true.

With respect to the merits of a procurement challenge pursuant to 28 U.S.C. § 1491(b), this Court applies the Administrative Procedure Act ("APA") standard of review. *See* 28 U.S.C. § 1491(b)(4) (providing that this Court "shall review the agency's decision pursuant to the standards set forth in section 706 of title 5"); *Nat'l Gov't Servs., Inc. v. United States*, 923 F.3d 977, 981 (Fed. Cir. 2019). This Court reviews an agency's procurement decisions under the APA to determine whether they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). A plaintiff succeeds on the merits where it demonstrates that either: "(1) the [agency]'s decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001) (citations omitted). Moreover, an agency's decision is arbitrary and capricious under the APA standard of review if the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or [the decision] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Ala. Aircraft Indus., Inc.-Birmingham v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (alteration in original) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)); see also *Tinton Falls Lodging Realty, LLC v. United States*, 800 F.3d 1353, 1358 (Fed. Cir. 2015) (quoting *Ala. Aircraft Indus.*, 586 F.3d at 1375); *Sharpe v. United States*, 935 F.3d 1352, 1358–59 (Fed. Cir. 2019).

## V.    DISCUSSION

### A.  The FASA Task Order Protest Bar Precludes this Court's Jurisdiction over FYI's Claims Related to the HCaTS Task Order Procurement

The precise scope of the FASA task order protest bar is muddled.  In *Tolliver Group, Inc. v. United States*, 151 Fed. Cl. 70, 93-101 (2020), this Court explained that FASA's task order protest bar cannot possibly apply to all actions brought pursuant to 28 U.S.C. § 1491(b).  The textual analysis behind that conclusion remains sound.  FASA's task order protest bar addresses, as its name suggests, "protests." 41 U.S.C. § 4106(f).  That is a term of art employed to parallel GAO's jurisdictional statute, the Competition in Contracting Act ("CICA"), 31 U.S.C. Subchapter V ("Procurement Protest System"), §§ 3551-57.  But while the term "protest" is defined in 31 U.S.C. § 3551(1), that term does not appear in this Court's primary jurisdictional statute, the Tucker Act, as amended by the Administrative Dispute Resolution Act of 1996, Pub. L. No. 104-320, 110 Stat. 3870 ("ADRA"), *codified at* 28 U.S.C. § 1491(b).[11]  And while 28 U.S.C. § 1491(b)(1) *does* provide for a number of actions commonly, but somewhat imprecisely, called bid protests — and that a frustrated offeror may instead file with the GAO in the first instance — this Court also has jurisdiction to decide an "action . . . objecting to . . . any alleged violation of statute or regulation in connection with a procurement or a proposed procurement."  28 U.S.C. § 1491(b)(1).  That latter prong of § 1491(b)(1) encompasses actions that are *not* "protests" and does *not* have an analog at GAO.  GAO therefore lacks jurisdiction to decide such actions.

The classic example of an action under the latter prong of § 1491(b)(1) is the Federal Circuit's decision in *RAMCOR*, which involved a challenge not to a solicitation or the outcome of a procurement, but to the government's override of the automatic CICA stay, 31 U.S.C. § 3553(c)(1), typically triggered by the timely filing of a GAO protest.  *RAMCOR Servs. Grp., Inc. v. United States*, 185 F.3d 1286, 1289 (Fed. Cir. 1999) ("If § 1491(b) required a challenge to the merits of the contract award, the contractor would never need to use the 'violation' prong but could always rely on other jurisdictional grants in § 1491(b)(1).").  Regarding the last prong of 28 U.S.C. § 1491(b)(1), "the Federal Circuit in *RAMCOR* explicitly reversed [the Court of Federal Claims's] determination 'that a [plaintiff] could only invoke § 1491(b)(1) jurisdiction by including in its action an attack on the merits of the underlying contract award' or the solicitation[.]"  *Tolliver*, 151 Fed. Cl. at 97 (quoting *RAMCOR*, 185 F.3d at 1289).  But the GAO itself has recognized that it "does not have jurisdiction over *RAMCOR*-type actions brought pursuant to the final prong of 28 U.S.C. § 1491(b)(1)."  *Tolliver*, 151 Fed. Cl. at 99–100 & n.41 (discussing *RAMCOR*, 185 F.3d at

---

[11] Indeed, "nothing contained in this subchapter shall affect the right of any interested party to file a protest with the contracting agency or to file an action in the United States Court of Federal Claims." 31 U.S.C. § 3556.  Thus, the GAO's statutory scheme distinguishes between protests and actions in this Court.

1289, and *AeroSage, LLC*, B-415267.13, 2018 CPD ¶ 114, 2018 WL 1392945 at *3 n.7 (Mar. 19, 2018) (concluding that the GAO "has no jurisdiction to consider whether an agency improperly failed to comply with a stay of performance")).  Accordingly, the scope of this Court's jurisdiction to decide certain "actions" pursuant to the Tucker Act, as amended by ADRA, is not coterminous with GAO's jurisdiction to decide "protests."  FASA's task order protest bar, therefore, can *only* deprive the Court of Federal Claims of jurisdiction over GAO *protests*, but not of jurisdiction over all *actions* pursuant to 28 U.S.C. § 1491(b)(1).

Unless this issue is revisited by the Federal Circuit *en banc*, however, all that analysis is academic, as our appellate court has — at least for now — squarely rejected it. *22nd Century Techs, Inc. v. United States*, 57 F.4th 993, 1000 n.3 (Fed. Cir. 2023) ("This argument is foreclosed by *SRA International*, which held that FASA reached protests brought under § 1491(b)(1)—including those brought under the final prong—as long as the protests are 'in connection with the issuance or proposed issuance of a task or delivery order.'" (quoting *SRA Int'l, Inc. v. United States*, 766 F.3d 1409, 1413 (Fed. Cir. 2014))).  Despite FYI's invitation to do otherwise, this Court has no intention of ignoring the Federal Circuit's unambiguous directive.

Accordingly, in applying *SRA International*, the salient question is whether the challenged agency decision "is directly and causally connected to [the] issuance of [a task order]," while recognizing that "a temporal disconnect may, in some circumstances, help to support the non-application of the FASA bar[.]"  *SRA Int'l*, 766 F.3d at 1413.  The Federal Circuit views the FASA bar as expansive, however, explaining that "this statute is somewhat unusual in that it effectively eliminates all judicial review for protests made in connection with a procurement designated as a task order—perhaps even in the event of an agency's egregious, or even criminal, conduct."  *Id.* (noting "Congress's intent to ban protests on the issuance of task orders is clear from FASA's unambiguous language").

Particularly given the Federal Circuit's critique of *Tolliver* in *22nd Century*, 57 F.4th at 1000 n.3, this Court does not see how FYI's complaint can possibly escape the gravitational field of FASA's task order protest bar.  Just as in *22nd Century*, the plaintiff's "challenge here 'is clearly made in connection with the issuance of a task order and is therefore barred by FASA.'"  57 F.4th at 1000 (quoting *22nd Century Techs., Inc. v. United States*, 157 Fed. Cl. 152, 157 (2021)).  At bottom, FYI's complaint admits as much:  "This Complaint *arises in connection with* FYI's [HCaTS] Small Business – Pool 2 Governmentwide Acquisition Contract ("GWAC") [and] Task Order Request for Proposals No. 70SBUR23Q00000180 issued by USCIS under the HCaTS Pool 2 GWAC[.]"  Compl. at 1 (emphasis added); *see also, e.g., id.* ¶ 19 ("FYI has a contractual right under the HCaTS GWAC . . . to compete for task orders."); *id.* ¶¶ 83-91 (allegations pertaining to "The Task Order Award To FYI"); *id.* ¶ 117 ("This count relates to the HCaTS procurement, the USCIS task order procurement under the HCaTS GWAC. . . ."); *id.* ¶138

("[I]gnoring the HCaTS level WOSB certification and mandating SBA certification deprives FYI of the right to compete and receive fair consideration for task orders.").

FYI specifically alleges that "[t]he USCIS Contracting Officer determined that FYI is not eligible to compete for this WOSB set-aside task order because SBA purportedly has not certified FYI as a WOSB," Compl. ¶ 141, and that such a determination was improper. Nothing more is necessary to demonstrate that no matter how FYI attempts to reframe its action here, *see* Tr. 8:21-23, we are dealing with a task order protest as the Federal Circuit has operationally defined that term. Indeed, FYI's core allegation and jurisdictional argument are nearly identical to the plaintiff's position in *22nd Century*, which the Federal Circuit ultimately rejected. *See* 57 F.4th at 999–1000 ("22nd Century's challenge is to the alleged failure of the task order to require bidders to recertify as small businesses, and 22nd Century's claim is that the only relevant size requirement for purposes of its task order proposal was in the original . . . IDIQ Contract."). FYI cannot avoid the Federal Circuit's rationale for applying the FASA task order protest bar articulated in *22nd Century* and *SRA International*.

FYI's WOSB status is simply irrelevant to the HCaTS SB GWAC itself. FYI won a contract award in the small business set-aside pool, AR 6357, *but there was no WOSB set-aside at the GWAC level*. AR 7697; AR 7791 ("the HCaTS was not solicited as a WOSB set-aside for Pool 2 SB"); Tr. 125:18-21 (FYI's counsel agreeing that the GWAC was not "set aside specifically for WOSBs"). Indeed, an internal email from the SBA's WOSB Federal Contract Program director explains that "because this procurement is not a[] WOSB set-aside at the contract-level, [FYI] would have to be formally certified at the time of the [task order] offer." AR 7697. Thus, FYI's WOSB status — for the purpose of this dispute — relates only to the HCaTS Task Order Procurement and the OASIS+ Procurement. The fatal problem on the merits for FYI — even assuming this Court could reach that question — is that FYI "has not been formally certified by SBA as a program participant and, at this time, would be ineligible for any WOSB set-asides." *Id.* The Task Order Procurement at issue is a new procurement and the new "WOSB Program regulatory requirements that were effective 10/2020 prior to awarding this procurement" apply to FYI's task order proposal. *Id.* Critically, the Court notes, once again, that SBA's system "indicates FYI, Inc. applied twice for the SBA WOSB certification in 2022 and once in July 2023. However, none of the applications were submitted" and "[t]hus, FYI, Inc. [was] not SBA WOSB certified." AR 7698.[12]

---

[12] *See also* AR 7791 (noting that two government officials "told FYI multiple times that they were ineligible for award during the post quote phase" and that "SBA had moved their WOSB application to pending status on 12/04/2023 per DSBS"); AR 7796 (noting that as of December 8, 2023, FYI's "DSBS status today shows the same pending 12/04/2023 status. So by the DSBS SBA system, they would not be certified and eligible for award today").

To the extent FYI attempts to reframe its claim regarding the Task Order Procurement as a contract claim based on 28 U.S.C. § 1491(a) — in order to avoid FASA's task order protest bar — the Federal Circuit has already squarely rejected such an approach, as well. That is because "[e]ven if a breach of contract claim under these circumstances would not be subject to the FASA bar — an issue we do not decide — such a challenge would have to be brought pursuant to the [Contract Disputes Act ("CDA")] and would have to comply with CDA requirements." *22nd Century*, 57 F.4th at 1000. As noted in *22nd Century*, "[t]he Tucker Act, 28 U.S.C. § 1491(a)(2), provides that '[t]he [Claims Court] shall have jurisdiction to render judgment upon any claim by or against, or dispute with a contractor arising under [the CDA], including a dispute concerning termination of a contract, ... on which a decision of the contracting officer has been issued under section 6 of [the CDA].'" *Id.* But "[t]o bring a case under the CDA, [the plaintiff] would have had to have first filed a claim with, and received a final decision from, the contracting officer, neither of which [the plaintiff] alleges occurred here." *Id.* (citing 41 U.S.C. § 7103(g) and *Reflectone, Inc. v. Dalton*, 60 F.3d 1572, 1575 (Fed. Cir. 1995) ("Under the CDA, a final decision by a [contracting officer] on a 'claim' is a prerequisite for ... jurisdiction.")). FYI makes precisely the same error as the plaintiff in *22nd Century*; FYI *never submitted a CDA claim*. In short, this Court lacks jurisdiction even pursuant to 28 U.S.C. § 1491(a).

FYI urges this Court to adopt a different interpretation of FASA's task order protest bar pursuant to the Due Process Clause of the Fifth Amendment of the United States Constitution. ECF No. 24 at 9. "At a minimum," FYI argues, "the Court should employ the canon of constitutional avoidance and interpret FASA not to violate the Fifth Amendment." *Id.* at 10. In FYI's view, "FASA cannot constitutionally preclude both administrative and judicial review of SBA's failure to provide FYI with due process before declaring FYI ineligible to participate in the WOSB program and impeding FYI's rights to a fair opportunity to compete under the HCaTS GWAC." *Id.* There are two problems with this argument. First, it does not actually address the matter at hand. The government here has not declared FYI ineligible to participate in the WOSB program. Rather, the government has determined only that FYI was not properly certified in accordance with the applicable WOSB regulations in time to compete for a particular task order solicitation. AR 7507. Second, this Court lacks the power to invalidate FASA's task order protest bar and cannot disregard the Federal Circuit's interpretation of it.

If a plaintiff were to challenge the government's failure to have properly recorded an otherwise legitimate WOSB certification in DSBS or SAM, perhaps this Court would have jurisdiction over such a case notwithstanding FASA's task order protest bar. And perhaps a plaintiff could even challenge the government's failure to properly process or evaluate a request for WOSB certification. In both of those cases, this Court at least can conceive of why the claims may be sufficiently logically attenuated from a particular task order so as to avoid the FASA task order protest bar. But neither such scenario is presented here. Indeed, in FYI's case, the government has now duly certified and

recorded FYI as a WOSB.  *See* Tr. 21:10-13.[13]  But nowhere does FYI contend that the listed certification date (February 13, 2024) is wrong, that FYI applied for such certification prior to submitting its proposals at issue, or that the government otherwise mishandled its application.  *See* Tr. 105.

Indeed, FYI here merely challenges its elimination from two specific procurements, one of which is a task order procurement, on the grounds that the government should have treated FYI as a WOSB under some prior regulation(s) either *not* incorporated in the solicitations at issue or that are inconsistent with yet other provisions that *are* incorporated in the solicitations (as explained in more detail below).  Thus, FYI's claims — challenging the government's view of FYI's WOSB status for the purposes of two specific procurements — are not sufficiently disconnected from the HCaTS Task Order Procurement to avoid the application of FASA's task order protest bar.

### B.  FYI's Claims are Waived Pursuant to the Federal Circuit's Decision in *Blue & Gold*

FYI stakes its additional claims on the argument that the government misapplied certain regulatory provisions in its solicitations.  But it is hard to imagine a more classic case of a *Blue & Gold* waiver than the one presented by FYI's claims here.

In *Blue & Gold Fleet, L.P. v. United States*, the Federal Circuit held that "a party who has the opportunity to object to the terms of a government solicitation containing a patent error and fails to do so prior to the close of the bidding process waives its ability to raise the same objection subsequently in a bid protest action in the Court of Federal Claims." 492 F.3d 1308, 1313 (Fed. Cir. 2007).  While "the *Blue & Gold* waiver rule—which seeks to reduce inefficiencies by requiring an objection to a solicitation be made prior to the close of bidding—" is alive and well, it is no longer jurisdictional.  *M.R. Pittman Grp., LLC v. United States*, 68 F.4th 1275, 1280 (Fed. Cir. 2023) (holding that "the requirement that a party object to a solicitation containing a patent error prior to the close of bidding does not speak to the Court of Federal Claim[s]'s authority to hear a case, but only to that party's procedural obligations").

In this case, the Task Order Solicitation provided that "[o]fferors must meet the requirements in FAR 19.15 to be eligible for award."  AR 7507.  FAR subpart 19.15 covers the "Women-Owned Small Business Program."  Pursuant to the current (and applicable) version of FAR 19.1505(d), an WOSB concern

> may submit an offer under an EDWOSB or WOSB set-aside
> when the offeror — (1) Qualifies as a small business concern

---

[13] *See also* https://dsbs.sba.gov/search/dsp_profile.cfm?sam_uei=RB12LWUDKK41.

> under the size standard corresponding to the NAICS code
> assigned to the contract; and (2) . . . is certified pursuant to 13
> CFR 127.300 as [a] . . . WOSB, or has a pending application
> for . . . WOSB certification in the DSBS (see 13 CFR 127.504(a)).

FAR 19.1505(d)(2)(ii). The contracting officer has no discretion: "The contracting officer shall verify that offers received are eligible for consideration for award by checking SAM to see if the EDWOSB or WOSB concern is designated as a certified concern or checking DSBS for a pending application for certification." FAR 19.1505(e). "Unless the offeror is designated as certified in SAM or has a pending application for certification in DSBS, the offer is not eligible for award and *shall be removed from consideration*." FAR 19.1505(e)(2) (emphasis added).

The Task Order Solicitation further incorporated by reference FAR 52.219-30 (OCT 2022), *see* AR 7516, which defines a WOSB as:

> a small business concern that is at least 51 percent directly and
> unconditionally owned by, and the management and daily
> business operations of which are controlled by, one or more
> women who are citizens of the United States, and the concern
> *is certified by SBA or an approved third-party certifier* in
> *accordance with 13 CFR 127.300* as a WOSB.

FAR 52.219-30 (emphasis added);[14] *see also* 13 C.F.R. § 127.300(c) ("How is a concern certified as an WOSB or EDWOSB?") ("If SBA determines that the concern is a qualified WOSB . . ., it will issue a letter of certification and designate the concern as a certified WOSB . . . on the Dynamic Small Business Search (DSBS) system, or successor system.").

The OASIS+ Solicitation similarly incorporated FAR 19.15 and 13 C.F.R. § 127.300. AR 1753 ("A concern must be certified by the SBA as a WOSB or Economically Disadvantaged Women-Owned Small Business (EDWOSB) pursuant to 13 C.F.R. § 127.300 and FAR 19.15 in order to be awarded a WOSB set-aside contract."). For that procurement, "[a]n EDWOSB or WOSB concern may also submit an offer under this set-

---

[14] There are only two possibilities: the government either correctly included this FAR clause or it did not. If the former, FYI loses this case because FYI did not comply with the new WOSB certification requirements. If the latter, FYI loses because the inclusion of the provision creates a patent "solicitation defect" to which *Blue & Gold* applies. *Blue & Gold*, 492 F.3d at 1314 (discussing "a contractor with knowledge of a solicitation defect"). Either way, FYI cannot prevail. In the Court's view, as explained *infra* Section V.C., the government correctly incorporated FAR 52.219-30 by reference in the Task Order Solicitation, and, thus, FYI would lose on the merits even if it had not waived its claims pursuant to *Blue & Gold*.

aside when the offeror has a pending application for EDWOSB or WOSB certification in the [DSBS] (see 13 CFR 127.504(a) and FAR 19.1505(d)(2)(ii)).” AR 1753.

FYI did not challenge, prior to proposal submission, either procurement's incorporation of the current WOSB regulatory requirements contained in FAR 19.15 or 13 C.F.R. § 127.300. Rather, FYI submitted a proposal in response to the Task Order Procurement on October 27, 2023, AR 7541, and in response to the OASIS+ Procurement on September 21, 2023, AR 1950. FYI does not dispute that it was not certified by SBA as a WOSB until February 13, 2024, *see* Def. MJAR at 9 n.5. FYI's strategic choice or its error — it doesn't matter which — dooms its case here. Tr. at 33:6-34:25 (FYI's counsel admitting that the contracting officers complied with the current version of the FAR provisions incorporated in the solicitations at issue); Tr. at 39:3-4 (FYI's counsel acknowledging that the "new FAR provisions kicked in in 2020"); Tr. 49:12-15 (FYI's counsel admitting that all the SBA and FAR changes "happened before the task order" procurement).

FYI argues that the *Blue & Gold* waiver rule is inapposite here because it "applies only to solicitation challenges." Pl. Rep. at 11. That is wrong or, at best, an oversimplification. It applies to any challenge to a procurement that could have been — and thus should have been — raised as a solicitation challenge, but was not. *See Mitchco Int'l, Inc. v. United States*, 26 F.4th 1373, 1380 (Fed. Cir. 2022) ("Mitchco was thus aware of the priority afforded the [state licensing agency] notwithstanding the small business set-aside and did not protest the terms of the solicitation prior to bid submission. It therefore cannot challenge its applicability now."). Here, both solicitations at issue placed FYI on notice that the government would apply the requirements of FAR 19.15 and 13 C.F.R. § 127.300. If FYI thought those provisions should not govern the WOSB procurements at issue, the time to raise that claim was prior to the due dates for proposals in the respective procurements.[15]

FYI's next argument regarding *Blue & Gold* proves the point. FYI asserts that "the Government and LinkVisum err by assuming that FAR 52.219-30 and SAM and DSBS designations are dispositive" when "they are not." Pl. Rep. at 12. According to FYI, certain other "SBA regulations—not FAR 19.1505 or FAR 52.219-30—control whether FYI is eligible to compete for WOSB set-aside procurements." *Id.* But this argument demonstrates clearly the fatal *Blue & Gold* waiver here: for FYI to prevail, the Court would have to determine that the government is required to follow some other regulatory provisions that are *not* incorporated in the solicitations at issue in lieu of the plain language of the FAR and SBA regulatory provisions that *are* incorporated. That is precisely the sort of challenge that must be raised prior to the due date for proposals.

---

[15] FYI's counsel conceded at oral argument that FYI did not argue in its briefs that there was any latent defect or ambiguity in the solicitations at issue. Tr. 50:21-24.

Moreover, as recounted in detail *supra*, the administrative record demonstrates that FYI attempted to obtain a proper WOSB certification, but simply failed to do in a timely manner. AR 7805 (FYI admitting that "FYI has been working with the SBA directly to get our WOSB status *pending*" (emphasis added)); AR 7807 (noting that FYI "is neither verified nor in a pending status" in the DSBS). FYI has no explanation for why it failed to follow the SBA's email guidance about the 2015 NDAA, AR 8042-46, in November 2022. In response to the Court's question during oral argument seeking an explanation for why FYI didn't just complete the application for WOSB certification as instructed, FYI's counsel weakly asserted only that his "client says there were system issues, and they had various problems with the SBA system itself[.]" Tr. 23:21-24:8; *see also* Tr. 78:13-16 (FYI's counsel admitting that FYI was not listed in the relevant databases as a certified WOSB). But that is no answer at all and certainly is insufficient to avoid *Blue & Gold*.

The record further fails to support FYI's assertion that the source of confusion lies only or even primarily with the SBA. Although FYI's counsel of record asserted during oral argument that "SBA, the arbiter of the database, told us we were certified," Tr. 80:18-20, there is no evidence that SBA ever told FYI that it had been certified under the new WOSB regulatory process promulgated due to the 2015 NDAA. As explained in detail *supra*, the administrative record makes perfectly clear that FYI either failed to understand the new requirement, failed to understand it well enough to attempt to become certified before the due date for the task order proposals, or tried to get certified but just did not manage to get the process completed. The Court sees some evidence suggesting that certain government employees did not understand FYI's questions — and thus perhaps gave less than precise or even nonresponsive answers — but the Court sees little to no evidence that the government is the sole, or even primary cause, of FYI's confusion.

Finally, even assuming the government at some point provided less-than-clear guidance to FYI, the government cannot be estopped from following the plain language of the provisions upon which the government correctly relied to determine that FYI is ineligible for the procurements at issue. *Perez v. United States*, 156 F.3d 1366, 1372-73 (Fed. Cir. 1998) (finding the government's interpretation of a statute more reasonable than plaintiff's and rejecting plaintiff's estoppel argument); *see also Off. of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 415-16 (1990) (rejecting an estoppel claim based on "erroneous oral and written advice given by a Government employee"); *cf. Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384 (1947) (holding that "anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority").[16]

---

[16] The government argues that FYI cannot challenge the OASIS+ Procurement because there has not yet been a "final agency action," and thus FYI's claim is not ripe. Def. MJAR at 33. The Court rejects this argument because there is no reason to believe the government will reach any different decision about FYI's WOSB status under the OASIS+ Procurement than under the HCaTS Task Order Procurement. *See CNA Corp v. United States*, 81 Fed. Cl. 722, 727 (2008) (concluding that an

### C. In the Alternative, FYI's Claims Fail on the Merits Because the Government Correctly Applied the Proper Regulations

Even assuming FYI could both navigate around the FASA task order protest bar and avoid the *Blue & Gold* obstacle, the Court holds, in the alternative, that FYI's claims fail on the merits. FYI contends that "SBA erred by applying SBA's October 2020 regulations to the HCaTS GWAC." Pl. MJAR at 31. FYI further argues that "even if SBA's current regulations apply, the SBA certification requirement is of no consequence . . . because FYI's HCaTS-level WOSB certification applies to task order procurements[.]" *Id.* at 32 (discussing 13 C.F.R. § 127.504).

The current version of the SBA and FAR provisions governing WOSB certification unquestionably apply to the OASIS+ Procurement at issue given that GSA first issued the solicitation at issue on June 15, 2023 — eight years after the 2015 NDAA and three years after the SBA issued the WOSB implementing regulations. Compl. ¶ 92; *see also* AR 1655. The Court cannot locate anything in FYI's briefs seriously arguing otherwise. FYI *does* assert that there is some prior acknowledgment from the government during the self-certification regime — *i.e.*, prior to the issuance of the new regulations implementing the 2015 NDAA — that FYI generally qualified as a WOSB or was eligible for such status. Pl. Rep. at 14-15. But FYI simply does not come to grips with the fact that once Congress enacted the 2015 NDAA — and once the new WOSB regulations were issued — firms had to at least apply for the new WOSB certification to be an eligible offeror in response to a solicitation for a new WOSB set-aside procurement. As the government correctly points out, Def. Rep. at 16, the basic *qualifications* for WOSB certification and actually *applying* for or *obtaining* WOSB certification are not the same thing.

As for the Task Order Procurement, FYI persistently pretends as if it obtained some government or third-party WOSB certification at the HCaTS SB GWAC-level when that was not the case. Indeed, FYI cannot be correct for the simple reason that there was no WOSB set-aside at the GWAC level at all. Rather, the pool in which FYI won a GWAC award was broadly for small businesses under the then-"Size Standard $15M" threshold. AR 6357, 6372, 6453.[17] The HCaTS SB GWAC did not even include, for example, a different version of FAR 52.219-30. Thus, FYI cannot even point to a GWAC provision that clearly conflicted with, and controls over, provisions in the Task Order Solicitation.[18]

---

agency's "anticipated or expected" decision based on an earlier final decision is ripe for a challenge pursuant to 28 U.S.C. § 1491(b)). The government contends that it "has taken no further [formal] action on the proposal since FYI filed this lawsuit," Def. Rep. at 8, *but there is no doubt about the inevitable outcome*, and the government does not assert otherwise. *See* Tr. at 62:1-22.

[17] This pool increased to a $16.5 million size standard by the latest in November 2021. AR 6453.

[18] The HCaTS SB GWAC itself is ambiguous regarding how provisions would flow down from it to any subsequently issued task order. On the one hand, the GWAC provides that "all applicable and required provisions and clauses set forth in FAR Section 52.301 automatically flow down to

Accordingly, and contrary to FYI's contentions, the government did *not* apply the new WOSB regulations to the GWAC itself, but rather only to the new Task Order Procurement. The government also rightly points out FYI's incorrect, implicit assumption that its WOSB status — of whatever nature — would somehow be grandfathered in under any subsequent regulatory regime or future task order. Def. Rep. at 15. The HCaTS SB GWAC contains no guarantee that the WOSB-regulatory regime would be stable for the life of the GWAC. *Id.* Even if the GWAC had contained such a promise, moreover, FYI's remedy would be a CDA claim, not a procurement action pursuant to 28 U.S.C. § 1491(b). In any event, the Court agrees with the government that applying the new regulations to the new Task Order Procurement is either proper or FYI is too late to complain about it. Def. Rep. at 16.

The Court has labored to try to understand FYI's argument based on the current version of 13 C.F.R. § 127.504, but something does not add up. That provision provides, in relatively plain English, that for every new contract — and the Task Order Procurement qualifies — the new rule is this:

> In order for a concern to submit an offer on a specific . . . WOSB set-aside requirement, the concern *must* qualify as a small business concern under the size standard corresponding to the NAICS code assigned to the contract, *and* either be a certified . . . WOSB pursuant to § 127.300, *or* represent that it has submitted a complete application for WOSB . . . certification to SBA or a third-party certifier and has not received a negative determination regarding that application from SBA or the third party certifier.

13 C.F.R. § 127.504(a) (emphasis added). FYI did not timely apply for or otherwise obtain such a certification pursuant to 13 C.F.R. § 127.300. As the Task Order Procurement — not the GWAC — is the "specific WOSB set-aside requirement" at issue. The contracting correctly checked FYI's certification or application status for FYI's task order proposal at the time of FYI's submission. Because that check came back negative (and repeatedly so),

---

all HCaTS SB task orders," but the determination of which "provisions and clauses" to include in task orders is "based on their specific . . . competition requirements . . . *as of the date the task order solicitation is issued.*" AR 6469 (§ I.1) (emphasis added). On the other hand, the GWAC also provides that "future applicable or required provision[s]/clause[s] may be updated . . . *by a bilateral modification to HCaTS SB.*" *Id.* (emphasis added). The indeterminate nature of the blanket flow down language appears to be improper. *See* FAR 52.103(a) ("Identification of provisions and clauses") ("Whenever any FAR provision or clause is used without deviation in a solicitation or contract, whether it is incorporated by reference or in full text, it shall be identified by number, title, and date."). But this is all academic as the government had no reason to include FAR 52.219-30 in the HCaTS SB GWAC to begin with; as explained above, it was not set aside for WOSBs.

and because FYI does not contend that it obtained timely certification (or submitted a timely application), that is game over for FYI on the merits.

For reasons unclear, FYI seeks support from 13 C.F.R. § 127.504(d)(1).  *See* Pl. MJAR at 3, 31.  But that provision does not help FYI at all.  Rather, that provision distinguishes — as FYI itself points out, Pl. MJAR at 34 — between (1) unrestricted multiple award contracts ("MACs") or those set aside for concerns other than WOSBs or EDWOSBs, and (2) WOSB set-aside MACs.  *See* 13 C.F.R. §§ 127.504(d)(1)(i) (unrestricted or other than WOSBs or EDWOSBs), 127.504(d)(1)(ii) (EDWOSB or WOSB MACs).  But there is no debate that the HCaTS SB GWAC falls into the first bucket; it was set aside for small business only and is not set aside at the GWAC level for WOSBs.  Thus, the HCaTS SB GWAC is covered by 13 C.F.R. § 127.504(d)(1)(i), which provides:

> For an unrestricted [MAC] or other [MACs] not set aside specifically for EDWOSB or WOSB, if a business concern is an EDWOSB or WOSB at the time of offer and contract-level recertification for the [MAC], it is an EDWOSB or WOSB *for goaling purposes* for each order issued against the contract, unless a contracting officer requests recertification as an EDWOSB or WOSB for a specific order or Blanket Purchase Agreement.

13 C.F.R. § 127.504(d)(1)(i) (emphasis added).  The implication is straightforward: because the GWAC at issue is a MAC that is "not set aside specifically for EDWOSB or WOSB," a business concern qualifying as such at the time of offer for the MAC continues to be a WOSB, but *only* "for goaling purposes" — *i.e.*, to meet an agency's socioeconomic goals. *Id.*  That provision does not speak to eligibility considerations for a specific task order procurement.  And nothing in that provision confers WOSB certification on an offeror for a specific task order, pursuant to 13 C.F.R. § 127.300, where none exists otherwise.

The Court's reading is validated by the remaining text of the regulation: "[I]f an order . . . under an unrestricted [MAC] is set aside exclusively for EDWOSB or WOSB, a concern *must* recertify it qualifies as an EDWOSB or WOSB at the time it submits its initial offer, which includes price, for the particular order[.]"   13 C.F.R. § 127.504(d)(1)(i) (emphasis added).  This status recertification appears to be precisely what the contracting officer verifies pursuant to the new SBA regulations and corresponding FAR updates. *See* 13 C.F.R. § 137.504(d)(2) ("SBA will determine . . . WOSB status at the time a business concern submits its initial offer (or other formal response to a solicitation) which includes price for an order . . . issued against a [MAC] if the contracting officer requests a new . . . WOSB certification for the order or Agreement."); *id.* § 137.504(h)(6) ("A concern's status will be determined at the time of a response to a solicitation for . . . each order issued pursuant to the Agreement.").   This is how SBA's Office of Hearings and Appeals ("OHA") appears to read these provisions as well. *See Wood Consulting Servs., Inc.*, SBA

No. WOSB-119, 2023 WL 8253436 at *9 n.2 (Nov. 20, 2023) ("SBA regulations indicate that, by submitting an offer for a WOSB set-aside procurement, a concern represents that it is WOSB-certified or has submitted a complete application for WOSB certification. . . . Here, LufCo submitted its initial offer including price on July 16, 2021, so OHA examines LufCo's WOSB status as of that date, utilizing the version of the WOSB regulations in effect at that time." (citing 13 C.F.R. § 127.504(a)).

FYI attempts to drive a wedge between the FAR and the SBA regulations, arguing that the SBA regulations control.  *See* Pl. Rep. at 3, 12; Tr. at 19:18-20.  But, again, and even assuming this Court could reach the issue, the SBA itself clearly reads its own regulations just like the Court and the government:

> Where the required status for an order differs from that of the underlying contract (*e.g.*, the MAC is a small business set-aside award, and the procuring agency seeks to restrict competition on the order to only certified HUBZone small business concerns), SBA believes that a firm must qualify for the socioeconomic status of a set-aside order at the time it submits an offer for that order.  Although size may flow down from the underlying contract, status in this case cannot. . . . SBA believes that *where the socioeconomic status is first required at the order level, an offeror seeking that order must qualify for the socioeconomic status of the set-aside order when it submits its offer for the order.*

Consolidation of Mentor-Protégé Programs and Other Government Contracting Amendments, 85 Fed. Reg. 66146-01, 66152, 2020 WL 6082069 (Oct. 16, 2020) (emphasis added).

Indeed, the SBA appears to have rejected arguments very similar — if not identical — to what FYI asserts in this case:

> The regulation is clear, a concern seeking a WOSB set aside contract must be eligible to be a WOSB and be either certified or have a certification application pending. 13 C.F.R. § 127.504(a). . . . Appellant has no pending application for certification.  Appellant rather attempts to argue that some language on the SBA's website authorizes it to submit an offer *because it continues to perform on an existing WOSB contract* it was awarded previously. However, Appellant's argument is

> meritless. *It is the regulations that must control* over any
> language on the website, *and Appellant simply does not meet the
> regulatory standard.*

*Soncoast Procurement, LLC*, SBA No. WOSB-117, 2022 WL 17423615 at *4 (Nov. 30, 2022)
(emphasis added).[19]

## VI.    CONCLUSION

For the foregoing reasons, Defendant's and Defendant-Intervenor's motions to
dismiss pursuant to RCFC 12(b)(1) are **GRANTED** with respect to the task order claims,
including those contained in Counts I, III, and IV of FYI's complaint.   Regarding all
claims, Defendant's and Defendant-Intervenor's respective cross-motions for judgment
on the administrative record are **GRANTED** pursuant to the Federal Circuit's decision
in *Blue & Gold*, 492 F.3d 1308.   In the alternative, the Court **GRANTS** the Defendant's and
Defendant-Intervenor's cross-motions for judgment on the administrative record on the
merits.   FYI's motion for judgment on the administrative record is **DENIED.**

**IT IS SO ORDERED**.

s/Matthew H. Solomson
Matthew H. Solomson
Judge

---

[19] SBA apparently *did* "assure holders of *existing WOSB contracts* that they would continue to hold
and perform these contracts as they had been self-certified at the time of award" but the
regulations do "not give these firms any eligibility for future contracts."   *Soncoast Procurement,
LLC*, 2022 WL 17423615 at *5 (emphasis added).   Indeed, SBA's OHA rejected the contrary
contention because that "argument would mean that any firm which held a WOSB certification
and is performing a WOSB contract would be considered eligible for any new contracts, whether
currently eligible or not, potentially constructing a chain of WOSB contracts with link based upon
each new WOSB contract. This would be an absurd result, which the regulations do not support
or grant."   *Id.*   In any event, the HCaTS SB GWAC is not an existing WOSB contract.